NOONAN, Circuit Judge,
dissenting:
James Dorsey was prevented “from engaging in otherwise appropriate cross-examination” of the chief witness against him. Olden v. Kentucky, 488 U.S. 227, 233, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988). That testimony was crucial. The error was not harmless. Id. at 232, 109 S.Ct. 480. I would grant the petition for writ of habeas corpus. 28 U.S.C. § 2254(d)(1).
Under oath on the witness stand, the accuser testified vividly about forced sexual encounters with the defendant. But the accuser also testified that no sexual relations of any kind whatsoever had taken place between her and the defendant. Later she testified to having written a letter stating that she had voluntarily engaged in sexual relations with both the defendant and his wife.
The state anticipated that the accuser, Wendy Hardee, would offer such seemingly conflicting testimony. In his opening statement, the prosecutor prepared the members of the jury for what would come, assuring them that the testimony would be that of a single witness:
[Hardee] had and has as many as ten personalities. They have various names, and you may see some of those personalities in the testimony presented to you from Wendy Hardee, one Wendy Har-dee, one Wendy Hardee who is nonetheless like a broken mirror who is one person but has many parts.
The prosecutor named the specific alternate personalities he expected Hardee to testify as: “Big Wendy,” “Little Wendy,” “Trouble,” and “Theresa.”
The state offered the testimony of two psychiatric experts to help the jury account for Hardee’s difficulties in recalling and relating in a coherent way what had happened. The first expert, after testifying that Hardee had been admitted to a psychiatric hospital on five separate occasions during the year prior to the indictment, explained in clinical terms that Har-dee had been diagnosed with and suffered from a psychiatric dissociative disorder commonly called “multiple personality disorder” (MPD). The second expert, Har-dee’s treating psychiatrist, explained that “[t]he primary indicators that would make [Hardee] fit into the category multiple personality disorder would be that she has separate, what we call alters or personality states ... where these parts do not necessarily have any understanding of the other parts of her.” He also testified as to MPD’s fracturing effect on memory and elaborated on the prosecutor’s “broken mirror” analogy:
[O]ne thing that’s important with a multiple personality disordered person is it’s not like they’re a whole bunch of little people. This is one person with a whole series of different memory fragments
Just as an example, a kind of an analogy is if you think of a person as a sheet of glass or a mirror. If you drop that mirror and break it, it breaks up into a lot of little pieces, but it’s still one whole mirror. ■ That’s still one mirror you’re looking at, even though it has lots of little fragments. And that’s really what happens with memory in a person with multiple personality disorder. All the *1192 memory and the whole person is still there, it’s just that the fragments aren’t together and they’re not touching or connected.
He further testified that during his clinical sessions with Hardee “three of her personalities” — “Little Wendy,” “Trouble,” and “Theresa” — described to him sexual acts that had taken place between her and Dorsey. He also testified that the alternate personality “Missy” was “very connected with” “the part of Wendy that knows everything, that has full recollection .... ” Hardee’s testimony was that four alternate personalities — “Little Wendy,” “Trouble,” “Theresa,” and “Missy” — were present during her sexual encounters with Dorsey. Hardee testified as her host personality “Big Wendy” and in a dissociative state as “Little Wendy” and as “Trouble.” Hardee gave no testimony as “Theresa” or as “Missy.”
We are not asked to assume that Har-dee had compartmentalized memories, as the majority states. That is the position taken by the prosecution. Similarly, we are not asked to assume the existence of other alternate personalities. Their existence was testified to by an expert for the state. We are not asked to assume the existence of “Theresa” and “Missy,” personalities knowledgeable about the sexual encounters. That is Hardee’s testimony.
The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides: “In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” U.S. Const, amend. VI. The Confrontation Clause is intended “to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.” Maryland v. Craig, 497 U.S. 836, 845-46, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). “[T]he Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose [testimonial] infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness’ testimony.” Delaware v. Fensterer, 474 U.S. 15, 22, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985).
To “state[ ] a violation of the Confrontation Clause,” Dorsey must “show[ ] that he was prohibited from engaging in otherwise appropriate cross-examination ....” Olden, 488 U.S. at 231, 109 S.Ct. 480. “Prohibit” means both “to forbid by authority” and “to preclude or prevent, to render impossible.” The majority, presuming only the first meaning, concludes that Dorsey was not prohibited from cross-examining his accuser: “the trial court gave Dorsey’s counsel the opportunity to cross-examine the host personality as well as her alternate personalities.” Because Dorsey refused to cross-examine Hardee while in a dissociative state, Dorsey “was not prohibited from pursuing any line of inquiry, but strategically chose not to.”
The majority sidesteps the constitutional inquiry into whether the trial court adequately safeguarded Dorsey’s rights secured by the Confrontation Clause. The challenge for the court was to provide Dorsey access for cross-examination to the parts that made up the whole of the witness, so that he would have “a full and fair opportunity to probe and expose [testimonial] infirmities” of Hardee’s memory. Fensterer, 474 U.S. at 22, 106 S.Ct. 292. The court’s solution was to insist that “Little Wendy” and “Trouble” formally be made available for cross-examination. In fact, the court was prepared to end the trial if Dorsey was not given access to the part of Hardee’s memory called “Trouble.” As to those two alternate personalities, the court’s insistence was a reasonable applica *1193 tion of the Confrontation Clause. But Hardee’s memory was broken into “ten personalities and seven fragments.” The court took no further action to make any other parts available for the accused to cross-examine. The very reasonableness of the court’s insistence as to “Little Wendy” and “Trouble” underscores its failure to apply the Confrontation Clause to the other memory fragments of the “broken mirror.” The trial court’s unreasonable response to Dorsey’s objection to Hardee’s testimony “precluded,” “prevented,” and “rendered impossible” a full and fair opportunity to cross-examine Hardee; Dorsey was thereby prohibited from cross-examining her. Williams v. Taylor, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (“a federal habeas court may grant the writ if the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner’s case”).
What accounts for the trial court’s unreasonable application of the Confrontation Clause? Was it that the court considered “Trouble” and “Little Wendy” to be individual witnesses? That notion runs counter to the argument and testimony offered by the state, and to the court’s admission of the state’s expert testimony that MPD sufferers are “not ... a whole bunch of little people” but are “one person with a whole series of different memory fragments.” Was it that Hardee testified as “Little Wendy” and “Trouble” but not as any other alternate personality? If so, that too is to treat each personality as a separate witness, and Hardee, by the prosecutor’s own argument, was “one person but has many parts.” And the parts, according to the state’s expert, are memory fragments that together constitute the entire memory of the witness. There is no principled way to distinguish what the trial court insisted happen with the “parts” called “Little Wendy” and “Trouble” and what simply did not happen with the other parts of Hardee’s memory.
True, “trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination.” Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). But the record is clear that “Theresa” and “Missy” had knowledge of the sexual encounters. Under the state’s theory of how Hardee’s memory was fragmented, those two “parts” held relevant information. That the state chose not to elicit direct testimony from those alternate personalities does not immunize the trial court from the constitutional requirement to make those parts available for cross-examination.
The majority takes comfort in “the option” that the court offered Dorsey “of attempting to summon alternate personalities himself, or of relying on the assistance of the prosecutor.” There is no indication in the record that anyone — prosecutor, defense counsel, trial court, treating psychiatrist, Hardee herself — was capable of summoning Hardee’s alternate personalities “Theresa” or “Missy” to the witness stand. On this record, the option amounts to no option at all.
Handing over a broken mirror consisting of fragmented, unconnected parts, without providing a key to how the parts fit together or a map to where the relevant memories are stored, does not satisfy the Confrontation Clause’s requirement of “a full and fair opportunity” for cross-examination. To suggest that such an opportunity was possible with this witness is not to take seriously the prosecution’s theory of the case and the state’s expert testimony about the essential memory-fragmenting feature of MPD. To say that the Confrontation Clause was not violated because Dorsey was unhindered from summoning any and all personalities he wanted does *1194 not square with the trial court’s reasonable insistence that “Little Wendy” and “Trouble” formally be made available for cross-examination.
It was a travesty of justice for the state of Georgia to convict a man on the testimony of less than one person.